UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | : | |
|---|---|---|
| INTEGRATED DESIGN ENGINEERING AND ANALYSIS SERVICES, INC., d/b/a Rapidmolds.com, | : : : : | CASE NO. 5:20-cv-00563<br><br>OPINION & ORDER<br>[Resolving Docs. 55, 56, 58, 59] |
| Plaintiff, | : : | |
| vs. | : : | |
| GIDDY HOLDINGS, INC. and BRETT JACOBSON, | : : : | |
| Defendants/Counter-Claimants, | : : | |
| vs. | : : | |
| BRAD BORNE AND INTEGRATED DESIGN ENGINEERING AND ANALYSIS SERVICES, INC., | : : : : | |
| Counter-Defendants. | : : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Defendant Giddy Holdings, Inc. engaged Plaintiff Integrated Design Engineering and Analysis Services ("IDEAS") to manufacture Defendant's product. After a payment and delivery dispute, IDEAS, Giddy, and Brett Jacobson, Giddy's CEO, entered into a settlement agreement.

Plaintiff IDEAS sues Defendants Giddy and Jacobson for breach of that settlement agreement.[1] Giddy countersues IDEAS and Counter-Defendant Brad Borne, IDEAS's president, for breach of the settlement agreement and conversion.[2]

---

[1] Doc. 1-1.
[2] Docs. 4, 15.

Case No. 5:20-cv-00563
GWIN, J.

Now, Plaintiff IDEAS moves for summary judgment on its breach of contract claim and Defendants' breach of contract and conversion claims.[3] Defendants oppose.[4]

Similarly, Defendants Giddy and Jacobson move for partial summary judgment on IDEAS's breach of contract claim.[5] Defendants also move for summary judgment on their conversion claim.[6] Plaintiff opposes.[7]

Finally, Counter-Defendant Borne moves for summary judgment on Giddy and Jacobson's breach of contract and conversion claims.[8] Defendants/Counter-Claimants do not oppose.[9]

For the following reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's motion, **GRANTS in part** and **DENIES in part** Defendants' motion, and **GRANTS** Counter-Defendant's motion.

I.   Background

In June 2019, Defendant Giddy contracted with Plaintiff IDEAS for the manufacture of Defendants' product, erectile dysfunction devices called "Giddy Packs."[10]

Under that contract, IDEAS, through a third-party Chinese factory, would produce 154,272 Giddy Packs in three phases—Production Runs 1, 2, and 3. In Production Runs 1 and 2, IDEAS would deliver 55,112 Giddy Packs.[11] In Production Run 3, IDEAS would

---

[3] Doc. 58.
[4] Doc. 61.
[5] Doc. 59.
[6] *Id.*
[7] Doc. 62.
[8] Doc. 56.
[9] Doc. 60.
[10] Doc. 59-1.
[11] Doc. 59-2.

Case No. 5:20-cv-00563
GWIN, J.

deliver 99,160 Giddy Packs.[12] Based on the three production runs' total size, IDEAS agreed to give Giddy a volume discount.[13]

In late 2019, a dispute arose between the parties. Essentially, Giddy asserted that it was entitled to the volume discount for Production Runs 1 and 2 even though it had not fully funded Production Run 3. Conversely, IDEAS maintained that until Giddy paid for 154,272 Giddy Packs, Giddy had not earned the volume discount.[14]

Attempting to resolve their disagreement, on January 14, 2020, Plaintiff IDEAS and Defendants Giddy and Brett Jacobson, Giddy's CEO, entered into an Inventory Purchase and Settlement Agreement ("Settlement Agreement").[15]

In the Settlement Agreement, the parties acknowledged, in relevant part that:

1. Giddy agreed to purchase 154,272 Giddy Packs for $468,868.77.
2. IDEAS had partially delivered on Production Runs 1 and 2, but that IDEAS still needed to deliver 22,564 Giddy Packs.
3. Giddy had received the volume discount price for Production Runs 1 and 2 because it agreed to purchase Production Run 3.[16]

Likewise, the parties agreed, in relevant part that:

1. On January 15, 2020, IDEAS would release the remining 22,564 Giddy Packs from Production Runs 1 and 2 to Giddy's shipping provider (Federal Express).
2. IDEAS would release the Giddy Packs and would give the volume discount price.
3. Within 14 days of the "pickup date," Giddy would pay for 50% of Production Run 3.
4. If Giddy did not proceed with the purchase of Production Run 3, Giddy agreed to pay $40,000 in liquidated damages—the approximate

---

[12] Doc. 59-2.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

- 3 -

Case No. 5:20-cv-00563
GWIN, J.

> difference between the volume discounted and non-discounted price—and an additional $120,000 in liquidated damages.[17]
> 5. IDEAS claimed an "artisan lien" on Giddy's molds—used to create the Giddy Packs—until Giddy paid IDEAS in full.[18]

Early on January 15, 2020, Brad Borne, IDEAS's president, directed the Chinese factory to notify FedEx that the Giddy Packs were ready for pickup.[19] On the same day, the Chinese factory, through Kelly Chen, sent FedEx the necessary shipping documents and informed FedEx that it could pick up the Giddy Packs.[20] Chen states that FedEx requested modified shipping documents and asked to move pickup to January 17, 2020.[21] On January 17, 2020, FedEx picked up the Giddy Packs.[22]

Plaintiff IDEAS sues Defendants Giddy and Brett Jacobson for breach of the settlement agreement. Specifically, IDEAS claims that Giddy and Jacobson did not fund Production Run 3. As a result, IDEAS argues it is entitled to $160,000 in liquidated damages—$40,000 for the remainder owed on Production Runs 1 and 2 (the volume discount amount) and $120,000 for lost profit on Production Run 3.[23]

In return, Defendants Giddy and Jacobson sue IDEAS and IDEAS's president, Counter-Defendant Brad Borne, for breach of the settlement agreement and conversion. Defendants claim that IDEAS did not satisfy the settlement agreement because it arguably failed to gamma irradiate and timely deliver 22,564 Giddy Packs. As a result, Defendants argue that IDEAS materially breached the settlement agreement, excusing Defendants from

---

[17] As explained below, the liquidated damages provision is unenforceable. *See infra* sub-section II.A.3.
[18] Doc. 59-2.
[19] Doc. 58-1 at 16.
[20] Doc. 58-2 at 23–25.
[21] *Id*. at 9.
[22] *Id*.
[23] Doc. 1-1.

Case No. 5:20-cv-00563
GWIN, J.

performance and damaging Giddy. Moreover, Defendants assert that IDEAS's refusal to return the molds that IDEAS used to manufacture the Giddy Packs resulted in a conversion.[24]

Presently before the Court are the parties' cross-motions for summary judgment.

## II. Discussion

A court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[25] In evaluating a motion, a court will "view the evidence in the light most favorable to the non-moving party."[26] However, the "'mere existence of a scintilla of evidence' in support of the non-moving party does not establish a genuine issue of material fact."[27] "The moving party is entitled to summary judgment when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."[28]

### A. Plaintiff Is Entitled to partial Summary Judgment in its Favor on its Breach of Contract Claim.

#### 1. Defendants breached the settlement agreement.

A breach of contract occurs when (1) there is a binding contract, (2) one party performs, (3) the other party breaches, and (4) the nonbreaching party suffers damages from the breach.[29] "As a general rule, a party does not breach a contract when the party

---

[24] Docs. 4, 15.
[25] Fed. R. Civ. P. 56(a).
[26] *Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, 954 F.3d 852, 859 (6th Cir. 2020) (citing *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018)).
[27] *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).
[28] *Goodman*, 954 F.3d at 859 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).
[29] *See Carbone v. Nueva Constr. Grp., L.L.C.*, 83 N.E.3d 375, 380 (Ohio Ct. App. 2017); *Becker v. Direct Energy, LP*, 112 N.E.3d 978, 988 (Ohio Ct. App. 2018).

- 5 -

Case No. 5:20-cv-00563
GWIN, J.

substantially performs the terms of the contract."[30] "For the doctrine of substantial performance to apply, the part unperformed must not destroy the value or purpose of the contract."[31]

At the same time, if one party materially breaches a contract, the other party is excused from performance.[32] A material breach "is a failure to do something that is so fundamental to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform."[33] Whether a party materially breached a contract is "generally a question of fact."[34]

Plaintiff IDEAS moves for summary judgment on its breach of contract claims.[35] It argues that there are no genuine material fact disputes and that Defendants Giddy and Jacobson breached the Settlement Agreement when they failed to fund Production Run 3.

Defendants oppose.[36] Defendants argue that summary judgment is inappropriate because there is a genuine material fact dispute as to whether Plaintiff materially breached the Settlement Agreement, thereby excusing Defendants from performance. Specifically, Defendants claims admissible evidence suggests that IDEAS materially breached the Settlement Agreement by failing to gamma irradiate the Giddy Packs.

Under the Settlement Agreement, Defendants were obligated to fund Production Run 3.[37] Defendants did not fund Production Run 3.

---

[30] *Whitt Sturtevant, LLP v. NC Plaza LLC*, 43 N.E.3d 19, 30 (Ohio Ct. App. 2015).
[31] *Hansel v. Creative Concrete & Masonry Const. Co.*, 772 N.E.2d 138, 141 (Ohio Ct. App. 2002).
[32] *Marion Family YMCA v. Hensel*, 897 N.E.2d 184, 186 (Ohio Ct. App. 2008).
[33] *Id.*
[34] *Whitt Sturtevant, LLP*, 43 N.E.3d at 30.
[35] Doc. 58.
[36] Doc. 61.
[37] Doc. 59-2.

- 6 -

Case No. 5:20-cv-00563
GWIN, J.

Accordingly, the Court finds that Defendants breached the Settlement Agreement. Unless Defendants have a legal excuse for their failure to perform, Defendants are liable to Plaintiff for breach of contract.

> 2. **Defendants would bear the burden of proving that Plaintiff materially breached the contract at trial and have failed to sufficiently establish that Plaintiff breached the Settlement Agreement.**

Defendants argue that they were excused from performing under the Settlement Agreement's terms because Plaintiff materially breached the contract.[38] At the summary judgment stage, Defendants do not establish that Plaintiff IDEAS materially breached the settlement agreement. Defendants shoulder the burden to show that Plaintiff materially breached the settlement agreement.

To support their claim that Plaintiff breached the Settlement Agreement, Defendants offer evidence suggesting that IDEAS did not gamma irradiate some of the Giddy Packs.[39] Conversely, IDEAS offers evidence that it did.[40] Accordingly, Defendants argue summary judgment on Plaintiff's breach of contract claims is inappropriate because there is a genuine material fact dispute as to whether IDEAS gamma irradiated the Giddy Packs.

Actually, there is no genuine dispute of material fact and Defendants fail to show that Plaintiff breached the contract. Defendants have not offered any proof that the Giddy Packs they received were not gamma irradiated. Instead, Defendants point to a single text message from IDEAS's president, Brad Borne, on January 8, 2020 stating: "We have a few pallets that still need to be gamma irradiated."[41] But under the Settlement Agreement, IDEAS was not

---

[38] Doc. 61.
[39] Doc. 61-2 at 2.
[40] Doc. 58-2.
[41] Doc. 61-2 at 2.

Case No. 5:20-cv-00563
GWIN, J.

obligated to release the Giddy Packs until January 15, 2020.[42] Borne's statement, made a week before the Giddy Packs were due, amounts to nothing more than "a mere scintilla of evidence."

As important, Plaintiff IDEAS gives a sworn statement from the supervising officer attesting that all Giddy Packs were irradiated and released for pickup by January 15, 2020. IDEAS also attaches the certificate of irradiation.

Accordingly, the Court finds that Defendants breached the Settlement Agreement without a legal excuse.

### 3. However, the Settlement Agreement's liquidated damages provision is invalid and unenforceable.

A liquidated damages provisions is valid and enforceable when "the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms" and when: (1) damages are "uncertain as to amount and difficult [to prove]," (2) "the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and (3) "the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount state should follow the breach thereof."[43]

With Defendants' breach, damages become neither uncertain nor difficult to prove.[44] Defendants failed to fund Production Run 3. Therefore, Plaintiff's damages are the amount

---

[42] Doc. 59-2.
[43] *Samson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St.3d 27, 19 (Ohio 1984) (quoting *Jones v. Stevens*, 112 Ohio St. 43 (Ohio 1925)).
[44] Because the Court finds that damages are not uncertain or difficult to prove, the Court declines to address the parties' additional arguments.

- 8 -

Case No. 5:20-cv-00563
GWIN, J.

Defendants would have paid for Production Run 3, including the non-recurring expenses outline the in the Settlement Agreement, less IDEAS's saved expenses.

Plaintiff IDEAS did not, itself, run the Giddy Packs production. Instead, it subcontracted the production to Chinese manufacturers. Presumptively, IDEAS's profits would involve deducting the costs incurred from the contract sale price.

Plaintiff's argument that damages are difficult to prove because Plaintiff costs had not been determined at the time the parties executed the agreement is unpersuasive.[45] "Exhibit A" of the Settlement Agreement itemizes the production costs, likely with Plaintiff's profit margin included, and states the total amount owed for Production Run 3 is $313,157.74.[46] The parties should be able to determine Plaintiff's damages at trial with limited difficulty.

Accordingly, the Court finds that the liquidated damages provision in the Settlement Agreement Production Run 1 and 2 is enforceable but the liquidated damage provision for Production Run 3 is unenforceable.[47]

### B. Plaintiff Is Entitled to Summary Judgment in its Favor on Defendants' Breach of Contract Counterclaim.

Plaintiff IDEAS moves for summary judgment on Defendants' breach of contract counterclaim.[48] With its counterclaim, Defendants sue on the same settlement agreement

---

[45] Doc. 62 at 8–9.
[46] Doc. 59-2.
[47] See Carr v. Ed Stein Realtors, 461 N.E.2d 930, 931 (Ohio Ct. App. 1983) ("[L]iquidated damages are appropriate only where actual damages are uncertain or difficult to ascertain."); see also Heskett Ins. Agency, Inc. v. Braunlin, No. 11CA3234, 2011 WL 5903484, *7 (Ohio Ct. App. Nov. 16, 2011) (finding that the damages provision failed prong one of the Jones v. Stevens test and was therefore unenforceable); Abbruzzese v. Miller, No.96APE03-265, 1996 WL 550341, *4 (Ohio Ct. App. Sept. 26, 1996); Lakewood Creative Costumers v. Sharp, 509 N.E.2d 77, 79 (Ohio Ct. App. 1986).
[48] Doc. 58.

Case No. 5:20-cv-00563
GWIN, J.

that Plaintiff uses.  In its motion, Plaintiff argues that there is no genuine material fact dispute and Defendants have failed to make a sufficient showing that IDEAS breached the Settlement Agreement by failing to gamma irradiate or timely release the Giddy Packs.

In their opposition, Defendants address the gamma irradiation issue.[49]  But as discussed above, there is no genuine material fact dispute and Defendants have failed to make a sufficient showing that Plaintiff did not gamma irradiate the Giddy Packs.  Defendants do not respond to the timeliness issue.[50]

Looking at the evidence in the light most favorable to Defendants, there is no genuine material fact dispute that IDEAS "released" the Giddy Packs on January 15, 2020 and within the time required under the Settlement Agreement.  IDEAS's president instructed the Chinese factory to release the Giddy Packs to FedEx.[51]  That same day, the Chinese factory sent the necessary shipping forms to FedEx.[52]  At that point, IDEAS had released the Giddy Packs, regardless of when FedEx picked them up.

Accordingly, the Court finds that Plaintiff did not breach the Settlement Agreement as a matter of law.

### C. Plaintiff is Entitled to Summary Judgment in its Favor on Defendants' Conversion Counterclaim.

"Conversion is an exercise of dominion or control wrongfully exerted over property in denial of or under a claim inconsistent with the rights of another."[53]  To establish a

---

[49] Doc. 61.
[50] *See* Doc. 61.
[51] Doc. 58-1 at 16.
[52] Doc. 58-2 at 23–25.
[53] *Dice v. White Family Cos.*, 878 N.E.2d 1105, 1108–09 (Ohio Ct. App. 2007) (citing *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96 (1990); *Union Sav. Bank v. White Family Cos., Inc.*, 853 N.E.2d 1182, 1189 (Ohio Ct. App. 2006)).

- 10 -

Case No. 5:20-cv-00563
GWIN, J.

conversion claim, a plaintiff must show that (1) the plaintiff owned or had a right to possess the property, (2) the defendant wrongfully dispossessed plaintiff of their property rights, and (3) the defendant's wrongful conduct caused damages to a damages.[54] If the conversion claim is based on a defendant's unlawfully retaining the plaintiff's property, then the plaintiff must establish that (1) they demanded the defendant return their property after the defendant "exerted dominion or control over the property," and (2) the defendant refused to return the property to the plaintiff.[55]

However, if a defendant has a valid lien on the plaintiff's property, then the defendant is not liable for conversion.[56] In Ohio, a molder has a lien on a customer's mold in their possession for the amount due for the manufacturing completed with the mold.[57]

Defendants move for summary judgment on their conversion claim. In support, Defendants have shown that (1) they own the molds Plaintiff IDEAS used to manufacture the Giddy Packs,[58] (2) they demanded Plaintiff return the molds,[59] and (3) Plaintiff refused.[60] Plaintiff also moves for summary judgment and argues that it has a statutory and contractual lien on the molds, because Defendants have not paid for the full cost of Production Runs 1 and 2.[61]

---

[54] *Id.* (quoting *Haul Transport of VA, Inc. v. Morgan*, CA 14859, 1995 WL 328995, *3 (Ohio Ct. App. June 2, 1995)).
[55] *Dice*, 878 N.E.2d at 1108–09 (quoting *Barnes v. First Am. Title Ins. Co.*, 1:06-cv-574, 2006 WL 2265553, *8 (N.D. Ohio Aug. 8, 2006) (citing *Tabar v. Charlie's Towing Serv., Inc.*, 646 N.E.2d 1132, 1136 (Ohio Ct. App. 1994))).
[56] *See Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*, 796 F.3d 576, 593 (6th Cir. 2015).
[57] Ohio Rev. Code § 1333.31(A)(1)(a).
[58] Doc. 59-2.
[59] Doc. 59-5.
[60] Doc. 58-1 at 9.
[61] Doc. 58.

- 11 -

Case No. 5:20-cv-00563
GWIN, J.

The Court finds that Plaintiff IDEAS has a valid lien on Giddy's molds. Under the Settlement Agreement, Defendants were not entitled to a volume discount for Production Runs 1 and 2 unless they funded Production Run 3.[62] Defendants did not fund Production Run 3. Therefore, until Defendants pay damages for breaching the Settlement Agreement, there is still an "amount due" for Production Runs 1 and 2, namely the difference between the full and discounted price.

Accordingly, the Court finds that Plaintiff is not liable for conversion as a matter of law.[63]

### D.  Counter-Defendant Brad Borne Is Entitled to Summary Judgment in His Favor on Defendant's Conversion Counterclaim.

Counter-Defendant Brad Borne also moves for summary judgment on Defendants' conversion counterclaim and argues that Plaintiff IDEAS, and not he, claims dominion over Giddy's molds.[64] Defendant does not oppose.[65]

Because Counter-Defendant Borne does not have control over Giddy's molds, the Court finds that Borne is not liable for conversion as a matter of law.

### III.   Conclusion

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's motion, **GRANTS in part** and **DENIES in part** Defendants' motion, and **GRANTS** Counter-Defendant's motion.

IT IS SO ORDERED.

---

[62] Doc. 59-2.
[63] See Kehoe, 796 F.3d at 593.
[64] Doc. 56.
[65] Doc. 60.

Case No. 5:20-cv-00563
GWIN, J.

Dated: March 5, 2021                    *s/    James S. Gwin*
                                         JAMES S. GWIN
                                         UNITED STATES DISTRICT JUDGE